IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHINESE CONSOLIDATED BENEVOLENT ASSOCIATION, an Illinois not-for profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> CHICAGO CHINATOWN BRIDGEPORT ALLIANCE SERVICE CENTER, an Illinois not-for-profit corporation and YMAN HUANG VIEN, individually, <br><br> Defendants. | Civil Action No: 21-cv-04370 <br><br> District Judge <br><br> Magistrate Judge |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COME the Defendants Chicago Chinatown Bridgeport Alliance Service Center ("CCBA SC") and Yman Huang Vien ("Vien") (collectively "Defendants"), by and through their attorneys, SmithAmundsen LLC, pursuant to Federal Rule of Civil Procedure 12(b)(6), move for entry of an order dismissing Plaintiff, Chinese Consolidated Benevolent Association's ("CCBA") Complaint, and in support thereof, Defendants state as follows:

**I.  INTRODUCTION**

Plaintiff, Chinese Consolidated Benevolent Association, is an Illinois not-for profit corporation that provides certain services to local Chinese community. Defendant, Chicago Chinatown Bridgeport Alliance Service Center, is also a not-for profit corporation, residing in Illinois. Defendant Yman Huang Vien has been and remains a member of Plaintiff CCBA's board of directors. Vien served as the President of CCBA's board from 2016 to 2019. Vien is now the President of Defendant CCBA SC's board of directors.

1

On August 17, 2021, Plaintiff filed a seven-count complaint (the "Complaint"), alleging a Federal Unfair Competition claim under the Lanham Act, Trademark Infringement and Unfair Competition under Illinois, violation of the Uniform Deceptive Trade Practices Act, violation of the Consumer Fraud and Deceptive Business Practices Act, and Conversion, against both Defendants CCBA SC and Vien, as well as Breach of Fiduciary Duty and Usurping Corporate Opportunity against Vien. As stated in detail below, Plaintiff fails to allege sufficient facts to successfully plead any of the seven claims. The Complaint in its entirety cannot survive a Rule 12(b)(6) motion and must be dismissed.

## II.  RULE 12(b)(6) STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is brought when the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(b)(6). While a motion to dismiss under Rule 12(b)(6) accepts as true the well-pleaded allegations of the complaint and draws reasonable inferences therefrom in the plaintiff's favor, to survive the motion "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The factual allegations must be enough to raise a right to relief above the speculative level. *Id.* In testing the legal sufficiency of the complaint, conclusions of law or unwarranted inferences are not admitted. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). A party "can plead himself out of court by unnecessarily alleging facts which . . . demonstrate that he has no legal claim." *Id*. Further, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981).

## III.  ARGUMENTS

1. **Count I requires dismissal because Plaintiff fails to state a claim under the Lanham Act.**

Plaintiff is relying on 15 U.S.C.A. § 1125(a)(1)(A) for its Count I unfair competition claim (*see* Dkt. #1, ¶27). The relevant section of the Lanham Act states the following:

> **(a) Civil action**
> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, <u>*uses in commerce*</u> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or…
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125 (emphasis added). In order to successfully state a violation of the Lanham Act, for either direct trademark infringement or unfair competition, a plaintiff must plead that (1) its mark is protectable, and (2) the defendants' use of the mark is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Plaintiff's Count I should be dismissed as it fails to allege (1) that it maintains a protectable mark; (2) that Defendants have "used" the mark in commerce as required under the Lanham Act; and (3) that such "use" is likely to cause confusion among the relevant consumers.

### i. *Plaintiff fails to show that "CCBA" is a protectable trademark.*

In bringing a Lanham Act claim, the plaintiff bears the burden of establishing that its mark is entitled to protection. *Box Acquisitions, LLC v. Box Packaging Products, LLC*, 32 F. Supp. 3d 927, 934 (N.D. Ill. 2014). Where a mark is unregistered with the United States Patent and Trademark Office ("USPTO"), "the burden is on the claimant to establish that it is entitled to protection under § 43(a) of the Lanham Act." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1013 (N.D. Ill. 2014), quoting *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998).

3

Plaintiff's Lanham Act claim is not alleging that Defendant Chicago Chinatown Bridgeport Alliance Service Center's use of its name has infringed on Plaintiff's name "Chinese Consolidated Benevolent Association." Rather, Plaintiff is claiming that the acronym of Defendant's name – *i.e.*, CCBA SC – is infringing Plaintiff's acronym and abbreviated name "CCBA." (*See* Dkt. #1, ¶22).

As a preliminary matter, Plaintiff fails to show that the acronym "CCBA" is registered with the USPTO, and in fact, Plaintiff has not submitted any application to register "CCBA" as a trademark. Instead, Plaintiff has filed two trademark applications in the USPTO that only include "CCBA" in combination with "Chinese Consolidated Benevolent Association". Both applications were filed as intent-to-use applications, with no date of first use in commerce, and are still undergoing prosecution and have not been approved. Although Plaintiff alleges that Chinese Consolidated Benevolent Association has existed for decades (*See* Dkt. #1, ¶9), it did not submit its trademark applications until fairly recently on November 3, 2020 – only a few months before filing this lawsuit – indicating that the applications were only submitted in anticipation of the lawsuit. *See* a true and accurate copy of Plaintiff's trademark applications, U.S. Serial Nos. 90296213 and 90296346, attached hereto as **Exbibit A**. Regardless, Plaintiff has not sought registration of "CCBA" by itself as a trademark.

Although trademarks do not necessarily need to be registered to allow mark owners to receive protection, "CCBA" is a weak descriptive mark that has not acquired any secondary meaning, and is therefore, not protectable.

Courts have held that "[a]bbreviations for generic or common descriptive phrases must be treated similarly [as the phrase]." *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 992–93 (7th Cir. 1989). The presumption is that the initials mean to the public the descriptive phrase from which they are derived. *Id.* at 994. There is a heavy burden on the

4

trademark claimant seeking to show independent meaning of initials apart from descriptive words which are their source. *Id.* Plaintiff does not claim that the abbreviation "CCBA" has a distinct meaning from "Chinese Consolidated Benevolent Association." Thus, for purposes of mark enforcement, "CCBA" should be treated similarly as the full mark "Chinese Consolidated Benevolent Association." A descriptive mark "describes the ingredients, qualities, or characteristics of an article of trade or a service." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1014 (N.D. Ill. 2014). Generally, "it is not protected as a trademark because a merely descriptive mark is a poor means of distinguishing one source of services from another." *Id.* "Chinese Consolidated Benevolent Association" describes exactly the goods and services Plaintiff provides, *i.e.*, that Plaintiff is a nonprofit association catering services to the Chinese community. It is therefore a descriptive mark. As a result, its abbreviation "CCBA" is also a descriptive mark.

A descriptive mark is not protected unless it becomes distinctive, or put another way, "acquires secondary meaning" in the collective consciousness of the relevant community. *Box Acquisitions, LLC v. Box Packaging Products, LLC*, 32 F. Supp. 3d 927, 934 (N.D. Ill. 2014). Secondary meaning is "a *mental association* in buyers' minds between the alleged mark and a single source of the product." *KJ Korea, Inc.*, 66 F. Supp. 3d at 1014. It exists when a mark "<u>has been used so long and so exclusively by one company</u> in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *KJ Korea, Inc.*, 66 F. Supp. 3d at 1014 (emphasis added).

In its Complaint, Plaintiff alleges that Chinese Consolidated Benevolent Association has operated under the marks "CCBA" and/or "CCBAC" during the decades when Plaintiff has existed. (*See* Dkt. #1, ¶10). This allegation fails to show the length of time Plaintiff has been using the

5

mark "CCBA," since it is unknown as to how often Plaintiff would use "CCBA" as opposed to its other alleged mark CCBAC.

Plaintiff also fails to make any factual allegation to show that "CCBA" has been exclusively used by Plaintiff. Many other organizations have also been using "CCBA" to represent themselves. For example, "CCBA" is also short for Conference of California Bar Associations. Moreover, the California Craft Brewers Association uses CCBA as its abbreviation as well. Finally, CCBA can also mean the Climate, Community & Biodiversity Alliance.

Secondary meaning can be established through "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." *Id.* "[T]he more descriptive the term, the greater the evidentiary burden to establish secondary meaning." *Box Acquisitions, LLC v. Box Packaging Products, LLC*, 32 F. Supp. 3d 927, 936 (N.D. Ill. 2014). However, other than making a conclusory allegation that "CCBA" has become synonymous with Chinese Consolidated Benevolent Association within and outside the Chinese Community (*see* Dkt. #1, ¶10), Plaintiff does not allege *any* facts to show that it put forth any effort in advertising and marketing its product/services under the name "CCBA," or present any facts to demonstrate that "CCBA" has acquired any secondary meaning. Plaintiff fails to plead facts to show that any relevant consumer would consciously connect the mark "CCBA" with Chinese Consolidated Benevolent Association in Illinois.

For the above stated reasons, Plaintiff fails to allege that "CCBA" is a protectable mark, and thus, its Lanham Act claim must be dismissed since trademark protection is only available to protectable marks under the Lanham Act.

> ii. **Plaintiff fails to allege any facts to show that Defendants have used "CCBA SC" as a mark <u>in commerce</u> as defined by the Lanham Act.**

The Lanham Act defines "use in commerce" as "use of a mark in the ordinary course of trade" either (1) on goods by placing the mark on the goods or (2) on services when the mark is used or displayed in the sale or advertising of services and the services are rendered in commerce. *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 863 (N.D. Ill. 2009).

To establish a prima facie false designation of origin claim under § 43(a)(1)(A), a plaintiff must establish that: (1) the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) the defendant caused such goods or services to enter into interstate commerce; and (3) the plaintiff "believes that he or she is likely to be damaged as a result thereof." *Web Printing Controls Co., Inc. v. Oxy–Dry Corp.,* 906 F.2d 1202, 1204 (7th Cir.1990) (quoting 15 U.S.C. § 1125(a)(1)).

The alleged Infringing Name as identified in the Complaint is "Chicago Chinatown Bridgeport Alliance Service Center which reduces to the same acronym 'CCBA SC'" (*See* Dkt. #1, ¶22). Plaintiff alleges that Defendant uses "the Infringing Name in a non-profit registry, when it attended community events and when it raised funds for the same type of community members served by" Plaintiff and services offered by Plaintiff. (*See* Dkt. #1, ¶23). Such alleged activities are not a "use in commerce" under the Lanham Act. Plaintiff does not actually allege that Defendant has used "CCBA SC" in and of itself as either a name or a trademark. Moreover, Plaintiff's Complaint contains no factual allegations that show Defendant actually placed "CCBA SC" on any goods or displayed it in the sale or advertising of its services that are rendered in commerce. Further, there is no fact alleged in the Complaint indicating that Defendant Chicago Chinatown Bridgeport Alliance Service Center falsely designated the origin of its service as Plaintiff Chinese Consolidated Benevolent Association. Other than conclusory allegations that Defendants' conduct of using the mark "CCBA SC" has caused and is causing immediate and

7

irreparable injury to Plaintiff, Plaintiff does not plead any fact to show what the injury is and how Defendant ever placed the allegedly infringing mark in commerce.

Thus, Plaintiff fails to plead sufficient facts to show that Defendant's use of "CCBA SC" violated the Lanham Act.

### iii. *Plaintiff fails to allege any facts to show that Defendants' use of the mark "CCBA SC" caused or is likely to cause any confusion.*

In determining whether there is a likelihood of confusion between the marks, "a court must ask whether consumers, and specifically consumers who would use either product [or services], would be likely to attribute them to a single source." *Checker Car Club of Am., Inc. v. Fay*, 262 F. Supp. 3d 621, 627 (N.D. Ill. 2017). "Possible confusion is not enough; rather, confusion must be 'probable.'" *Id.*

The Seventh Circuit uses seven (7) factors to conduct the likelihood of confusion test: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendant to palm off his product as that of another." *Barbecue Marx. Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043–44 (7th Cir. 2000). While none of these factors is dispositive, the Seventh Circuit has stated that the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important. *Checker Car Club of Am., Inc.*, 262 F. Supp. 3d at 627.

The acronym "CCBA SC" is highly distinct and dissimilar from the Plaintiff's acronym "CCBA" due to the addition of "SC," which substantially changes the look and feel of the mark. CCBA SC contains a completely separate and distinct acronym "SC", consisting of two letters that comprises a third of the mark as a whole. Plaintiff does not allege any facts to show that any actual confusion has happened or any potential confusion is likely to occur. Moreover, no allegation in

8

the Complaint demonstrates that Defendant Chicago Chinatown Bridgeport Alliance Service Center intended its customers to associate the services it provided to them with the Plaintiff. These factors alone are enough to show that no likelihood of confusion exists, and so Plaintiff has not properly pled its Lanham Act claim.

### iv. *Plaintiff's Lanham Act claim against Vien individually should also be dismissed.*

As a general rule, corporate officers are not held personally liable for trademark infringement by their corporation when they are acting within the scope of their duties. *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 864 (N.D. Ill. 2009). A plaintiff seeking to hold an officer personally liable must make a "special showing" that the officer acted "willfully and knowingly," such as by "personally participat[ing] in the manufacture or sale of the infringing article (acts other than as an officer)" or by "[using] the corporation as an instrument to carry out his own willful and deliberate infringements." *Id.*, citing *Drink Group, Inc. v. Gulfstream Communications, Inc.,* 7 F.Supp.2d 1009, 1010 (N.D. Ill. 1998).

In *Specht*, the court found that the mere facts that the individual defendants incorporated the defendant company, sold the company to Google by using the infringing trademark, and became employees of Google, were insufficient to state trademark infringement claim against these individuals "in the absence of allegations that, at the time of incorporation, they were motivated by some improper purpose or acting outside the scope of their corporate duties." 660 F. Supp. 2d at 864. Similarly, here, other than alleging that Vien incorporated CCBA SC, Plaintiff fails to make any special showing that Vien "willfully and knowingly" used the alleged infringing mark "CCBA SC" for sales of any goods or services outside the scope of her corporate duties at CCBA SC. Plaintiff also fails to allege any facts to demonstrate Vien used the mark "CCBA SC" to willfully carry out any infringement for Vien's personal purposes.

9

Therefore, Plaintiff's Lanham Act claim against CCBA SC and Vien should be dismissed.

## 2. Counts II – IV should be dismissed based on the same reasons why Count I should be dismissed.

Plaintiff's Count I alleges a Federal Unfair Competition claim under the Lanham Act; Count II alleges a Trademark Infringement and Unfair Competition claim under Illinois Common Law; Count III alleges a Violation of the Uniform Deceptive Trade Practices Act ("DTPA"); and Count IV alleges a violation of the Consumer Fraud and Deceptive Business Practices Act.

Each of the first four claims asserted by Plaintiff involve the same elements and proofs. *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014); *see AHP Subsidiary Holding Co. v. Stuart Hale Co.,* 1 F.3d 611, 619 (7th Cir. 1993) (holding that the elements of a state unfair competition claim mirror those of federal statutory trademark infringement); *Spex, Inc. v. Joy of Spex, Inc.,* 847 F. Supp. 567, 579 (N.D. Ill. 1994) (citing *Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901, 908 (7th Cir. 1983) (holding that "[c]laims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act," and noting that "Illinois courts look to federal case law and apply the same analysis to state infringement claims," including claims of unfair competition under Illinois common law); *Trans Union LLC v. Credit Research, Inc.* 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (citing *AHP Subsidiary Holding Co.,* 1 F.3d at 619) (interpreting claims of trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125, unfair trade practices under the Illinois Uniform Deceptive Trade Practice Act and Illinois Consumer Fraud and Deceptive Business Practices Act, as well as trademark infringement and unfair competition claims under Illinois common law, to involve the same elements).

For example, the *Specht* Court dismissed the DTPA claim alleged by the plaintiff based on the same reasons that it dismissed the plaintiff's Lanham Act claim. *Specht*, 660 F. Supp. 2d at

10

866. Therefore, Plaintiff's Counts II – IV should be dismissed based on the same reasons above where that Plaintiff's Lanham Act should be dismissed.

### 3. **Plaintiff's Count V Breach of Fiduciary Duty against Defendant Vien should be dismissed because Plaintiff fails to state a claim.**

To state a claim for breach of fiduciary duty, plaintiff must allege (1) that a fiduciary duty exists, (2) that the fiduciary duty was breached, and (3) that such breach proximately caused the injury of which plaintiff complains. *Neade v. Portes*, 193 Ill. 2d 433, 444 (Ill. 2000).

In Count V, Plaintiff alleges that Vien breached her <u>fiduciary duty of loyalty</u> to CCBA by usurping the actual and potential corporate opportunities when she created CCBA SC to compete with CCBA through use of the Infringing Name "CCBA SC." (*See* Dkt. #1, ¶44). In addition, Vien breached her <u>fiduciary duty of obedience</u> when: she spent efforts to obtain a $15 million loan for CCBA to pursue a senior housing project, without proper approval of the CCBA board; signed two CCBA checks totaling $169,200 payable to Vari Architects without proper approval of the CCBA board; and failed to return CCBA property after her tenure as President of CCBA's board ended. (*See* Dkt. #1, ¶45).

Plaintiff's allegation of breach of fiduciary duty of loyalty alleges a usurping corporate opportunity claim. Usurpation of a corporate opportunity is a distinct cause of action for breach of fiduciary duty that involves a particular type of injury: the taking or seizing of a corporate opportunity and the commensurate loss of that opportunity by the corporation. *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 47 (Ill. 2021). A corporate opportunity is a <u>proposed business activity</u> that is "reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage." *Advantage Marketing Group, Inc. v. Keane*, 2019 IL App (1st) 181126, ¶ 35 (Ill. App. 2019) (emphasis added).

11

"Strictly speaking, corporate opportunity cases are characterized by a particular and narrow fact pattern: (1) a third party presents an identifiable, concrete deal relating to the corporate employer's business; (2) the deal is a 'zero-sum' game in the sense that only the corporate employer or its fiduciary—but not both—can seize it, leaving the loser permanently shut out; and (3) the fiduciary diverts the deal to himself, whether before or after his resignation." *Indeck Energy Services, Inc.*, 2021 IL 125733, ¶ 47, quoting William Lynch Schaller, *Corporate Opportunities and Corporate Competition in Illinois: A Comparative Discussion of Fiduciary Duties,* 46 J. Marshall L. Rev. 1, 18 (2012).

Other than making a conclusory allegation that Vien established a non-profit corporation that competes with CCBA, Plaintiff does not allege any facts as to what actual or potential corporate opportunity belonging to CCBA was seized by Vien and diverted to herself. "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981). The factual deficiency here warrants that this portion of Count V must be dismissed.

In regards to Plaintiff's allegation of breach of fiduciary duty of obedience, it is not a recognized cause of action under Illinois Law. The facts alleged by Plaintiff to show this breach are still within the zone of the fiduciary duty of loyalty.

As to the alleged $15 million loan for CCBA to pursue a senior housing project, Plaintiff clearly states that what Vien obtained was a loan proposal, *i.e.*, a commitment from the bank, but not a loan. (*See* Dkt. #1, ¶16). Plaintiff fails to allege what proper authorization from the CCBA board was lacking to give Vien fair notice of the grounds upon which this part of Plaintiff's Count V rests. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiff complains that "[t]he amount of the loan (commitment) was considerably less than the amount necessary to fund

12

the senior housing project. in addition, a condition of the loan, the bank required that Vien remain the lifetime President of CCBA […]." (*See* Dkt. #1, ¶16). These allegations indicate that Plaintiff was indeed in a need of a loan for its senior housing project; however, Plaintiff was not satisfied with the amount of the loan Vien was able to have the bank commit to and was not willing to accept the condition the bank placed on the loan. Plaintiff then alleges that subsequently, the CCBA board voted to decline the finance terms with the bank. (*See* Dkt. #1, ¶18). Plaintiff fails to make any factual allegations to show that CCBA sustained any damages due to the loan proposal obtained by Vien.

Similarly, for the claim that Vien signed two CCBA checks totaling $169,200 payable to Vari Architects, Plaintiff fails to allege what proper authorization from the CCBA board was lacking for Vien to take this action so that Vien can have fair notice of the grounds upon which this part of Plaintiff's Count V rests. Plaintiff does not claim that the amount paid to Vari Architects was not owed by CCBA. The Complaint is wholly devoid of any fact to show that CCBA sustained any damages because Vien signed the two checks payable to Vari Architects.

Lastly, as to Vien's alleged failure to return CCBA property, the only fact Plaintiff alleges to support this claim is that Vien possesses corporate records and documents of CCBA and has refused to return them to CCBA. (*See* Dkt. #1, ¶24). In Illinois, corporate directors have the presumptive right to inspect corporate books and records. *Munroe-Diamond v. Munroe*, 2019 IL App (1st) 172966, ¶ 27 (Ill. App. Ct. 2019). Plaintiff admits that Vien remains a member of CCBA's board (*see* Dkt. #1, ¶11), which means she is entitled to have copies of CCBA records and documents. This is certainly not a fact that Plaintiff can rely on to support Plaintiff's breach of fiduciary duty claim.

**4.     Plaintiff's Count VI Usurp Corporate Opportunity against Defendant Vien should be dismissed since Plaintiff fails to allege that any corporate opportunity that has been usurped.**

13

To support its Count VI, Plaintiff alleges that Vien received invitations from civic organizations to attend community events that were directed to CCBA. (*See* Dkt. #1, ¶50). However, this fact cannot help Count VI survive dismissal because the opportunities to attend community events are not opportunities to conduct the business deals addressed under usurpation of corporate opportunity claims. In addition, a cause of action for usurpation of a corporate opportunity requires a plaintiff to establish that the opportunity has in fact been taken, *i.e.*, that the opportunity is no longer available to it. *Indeck Energy Services, Inc.*, 2021 IL 125733, ¶ 71. Even if attending community events can be deemed as corporate opportunities, Vien's attendance did not preclude CCBA from attending the same events. No fact is alleged by Plaintiff to show that it was a "zero-sum" situation required by Illinois law, nor that only Vien or CCBA, but not both, could attend the events. Moreover, Plaintiff did not allege any facts to show that CCBA incurred any loss by not attending the said community events. Vien did not commit any wrongdoing in attending an event that she was invited to.

Plaintiff next alleges that without knowledge of CCBA, Vien signed and CCBA SC filed Articles of Amendment with the Illinois Secretary of State, to transfer all assets upon dissolution of CCBA SC for its own purpose, rather than to CCBA. (*See* Dkt. #1, ¶51). These factual allegations do not support Plaintiff's Usurp Corporate Opportunity claim either. CCBA SC has its own board of directors and is entitled to decide how its assets will be used upon its dissolution. It has the sole rights to determine who the beneficiary of its assets will be and is not required to send CCBA any prior notice of its decision. CCBA's loss of status as beneficiary to CCBA SC's assets cannot be the same as losing a corporate opportunity to conduct a business deal. Thus, Count VI of the Complaint should be dismiss as Plaintiff fails to allege any facts to support this claim.

**5.  Plaintiff's Count VII Conversion against Defendants Vien and CCBA SC should be dismissed as it is not supported by sufficient facts.**

To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *The Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 475 (1st Dist. 2006). Conversion is a common law tort claim which requires a showing of damages.

As stated above, the only CCBA property Plaintiff alleges that are in Vien's possession and have not been returned to CCBA are certain CCBA corporate records and documents. (*See* Dkt. #1, ¶24). Vien who remains a member of CCBA's board (*see* Dkt. #1, ¶11) has the presumptive right to inspect to CCBA records and documents. Documents are unique compared to other types of personal property as they can be readily duplicated. Plaintiff does not claim that the CCBA records and documents in Vien's possession is the sole copy, so that CCBA has lost its property right to those records due to Vien's possession of them.

As to the Conversion claim against Defendant CCBA SC, Plaintiff does not allege any facts to show that CCBA SC improperly possessed any CCBA's property. Thus, Count VII has to be dismissed as no sufficient facts have been alleged to show that any conversion has occurred.

### IV. CONCLUSION

WHEREFORE, Defendants, Chicago Chinatown Bridgeport Alliance Service Center and Yman Huang Vien, respectfully moves this Court to dismiss all counts of Plaintiff, Chinese Consolidated Benevolent Association's Complaint, with prejudice, and for any further relief deemed proper and just.

15

Date: November 23, 2021　　　　　　　　　　　Respectfully submitted

　　　　　　　　　　　　　　　　　　　　　　　SmithAmundsen LLC

　　　　　　　　　　　　　　　　　　　By:　　/s/ Gary Zhao
　　　　　　　　　　　　　　　　　　　　　　One of the Attorneys for Defendants

SMITHAMUNDSEN LLC
Gary Zhao, Esq. (ARDC #6279527)
150 N. Michigan Ave., Ste. 3300
Chicago, IL 60601
(312) 894-3377 – Telephone
gzhao@salawus.com
**ATTORNEYS FOR DEFENDANT**

### Certificate of Service

I hereby certify that on November 23, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Steven L. Baron
Jonathan Lustig (6196847)
The Law Office of Jonathan Lustig P.C.
200 East Randolph
Suite 5100
Chicago, IL 60601
jonathanlustig@lustiglawgroup.com

Steven L. Baron 6200868
Baron Harris Healey
150 South Wacker Drive
Suite 2400
Chicago, IL 60606
sbaron@bhhlawfirm.com