IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHINESE CONSOLIDATED BENEVOLENT ASSOCIATION, ) ) ) Plaintiff, ) ) ) v. ) ) ) CHICAGO CHINATOWN BRIDGEPORT ) ALLIANCE SERVICE CENTER, et al., ) ) Defendants. ) | No. 21-cv-04370<br><br>Judge Andrea R. Wood |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chinese Consolidated Benevolent Association ("CCBA"), a non-profit corporation serving the Chinese community in Chicago, has sued Defendants Chicago Chinatown Bridgeport Alliance Service Center ("CCBA SC") and Yman Huang Vien for trademark infringement, breach of fiduciary duty, usurping corporate opportunity, and conversion. Specifically, CCBA alleges that Vien, the former President of CCBA's board, created a competitor non-profit corporation to provide the same services as CCBA under a nearly identical name. In doing so, according to CCBA, Defendants capitalized on the goodwill and reputation of CCBA. Before the Court is Defendants' motion to dismiss CCBA's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

BACKGROUND

For purposes of the motion to dismiss, the Court accepts the well-pleaded factual allegations in the Complaint as true and draws all reasonable inferences from those facts in

CCBA's favor as the non-moving party. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Complaint alleges as follows.

CCBA is a non-profit organization in Illinois that has served Chicago's Chinese immigrant community for more than a century. (Compl. ¶ 9, Dkt. No. 1.) Its services include "providing education, social and community services, senior services, youth programs, cultural events, festivities and celebrations, and Chinese cemetery services." (*Id.*) For decades, CCBA has operated under the names "CCBA" and "CCBAC." (*Id.* ¶ 10.) From 2016 to 2019, real estate developer Vien served as President of CCBA. (*Id.* ¶ 11.) Though no longer President, Vien remains a member of CCBA's board. (*Id.*)

Around July 2018, CCBA had been developing a senior housing project. (*Id.* ¶ 13.) At the same time, CCBA was undergoing an Internal Revenue Service ("IRS") audit. (*Id.*) In case CCBA lost its non-profit status, Vien implored CCBA to form a separate non-profit entity that would own and protect real estate involved in CCBA's project. (*Id.*) Based on the allegations of the Complaint, it is unclear how CCBA responded to Vien; but ultimately, CCBA maintained its non-profit status and completed the IRS audit satisfactorily. (*Id.* ¶ 15.)

On July 3, 2018, CCBA attorney Sally Wagenmaker incorporated CCBA SC[1] as a non-profit corporation at the request of Vien. (*Id.* ¶ 12.) According to CCBA, that non-profit corporation presents itself to the public as "CCBA SC" or "CCBA Service Center." (*Id.*) Vien is the President of CCBA SC's board and Wagenmaker is its attorney. (*Id.* ¶¶ 11–12.) CCBA SC's principal office is listed with the Illinois Secretary of State as 250 W. 22nd Place, Chicago, Illinois 60616—the same address as CCBA. (*Id.* ¶ 17.)

---

[1] For purposes of this memorandum opinion, the Court uses the acronym "CCBA SC" to refer to the entity in all its forms (*e.g.*, CCBA Service Center, Chicago Chinatown Bridgeport Alliance Service Center).

Also on July 3, 2018, CCBA SC filed records with the Illinois Secretary of State listing the following members of its Board of Directors: Vien, David Chan, Kin Ng, Jerry Moy, Wayne Moy, and Duc Huang. (*Id.* ¶ 14.) Chan and Ng, both members of CCBA's board, did not know that they had been named as directors or officers of CCBA SC. (*Id.*) Records subsequently filed with the Illinois Secretary of State by CCBA SC identify its officers and directors as Vien, Jerry K. Gee, Ng, Moy, and Tat Wai Chan. (*Id.* ¶ 17.) Neither Ng nor Wai Chan were aware of their inclusion in the filing at the time. (*Id.*)

On March 8, 2019, without the authorization of CCBA, CCBA SC obtained a commercial loan proposal in the amount of $15,000,000 from International Bank of Chicago. (*Id.* ¶ 16.) Pursuant to its conditions, the loan was to be guaranteed and collateralized with CCBA's property. (*Id.*) As another condition of the loan, Vien would have to remain lifetime President of CCBA. (*Id.*) The CCBA board did not, and would not, approve this condition. (*Id.*) According to CCBA, CCBA SC pursued the loan because Vien had represented that she could secure a $24 million loan for the senior housing project. (*Id.*)

On or around August 29, 2019, CCBA's board voted to discontinue its pursuit of the senior housing project and declined the International Bank of Chicago loan. (*Id.* ¶ 18.) On October 21, 2019, Vien signed two CCBA checks totaling $169,200 for work on the senior housing project. (*Id.* ¶ 19.) This was done without approval from the CCBA board. (*Id.*)

On February 6, 2020, CCBA SC filed and Vien signed Articles of Amendment stating that, upon dissolution, CCBA SC would dispose of its assets for its own purpose, rather than transferring all assets to CCBA. (*Id.* ¶ 21.) The Articles of Amendment stated that CCBA SC had the written consent of all its directors to make the amendment, but that was not the case. (*Id.*) Then, on August 8, 2020, CCBA SC again filed Articles of Amendment signed by Vien. (*Id.*

3

¶ 22.) The Articles changed the name of CCBA SC to Chicago Chinatown Bridgeport Alliance Service Center. Once again, the Articles of Amendment stated that CCBA SC had the written consent of all its directors, though that was not the case. (*Id.*)

According to CCBA, after having "orchestrated the creation of CCBA SC while under the umbrella of CCBA," Vien then "divorced" CCBA SC from CCBA; nonetheless, CCBA SC currently uses its name in a non-profit registry when attending community events and fundraising for the same types of community members CCBA serves. (*Id.* ¶ 23.) Vien also possesses CCBA corporate records and documents that she has refused to return upon CCBA's request. (*Id.* ¶ 24.) Vien continues to receive invitations from civil organizations to community events. (*Id.* ¶ 50.) According to CCBA, the invitations are directed to and could benefit its own organization. (*Id.*) Indeed, several directors of CCBA, including Ng, have been asked by community leaders why CCBA has not attended community meetings, but CCBA directors have received no invitations or meeting notices. (*Id.*)

In its Complaint, CCBA asserts several claims against both CCBA SC and Vien: trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); trademark infringement and unfair competition under Illinois common law (Count II); violation of Illinois's Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1 *et seq.* (Count III); and violation of Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Count IV). Additionally, CCBA asserts three Illinois common-law claims against Vien alone: breach of fiduciary duty (Count V), usurping corporate opportunity (Count VI), and conversion (Count VII).

**DISCUSSION**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *See Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I. Trademark Infringement (Counts I–IV)

CCBA asserts four claims against CCBA SC and Vien for trademark infringement under federal and state law.

Count I asserts a claim under the federal Lanham Act, which provides in relevant part that a plaintiff may bring a civil action against

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person.

15 U.S.C. § 1125(a)(1). To state a trademark infringement claim under the Lanham Act, a plaintiff must allege that: (1) the mark at issue is protectable, (2) the defendant used the mark in commerce, and (3) the defendant's use of the term is likely to cause confusion among consumers. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 674 (7th Cir. 2001). Illinois statutory and common law trademark claims are examined using the same analysis as for federal trademark claims. *Jim Mullen Charitable Found. v. World Ability Fed'n NFP*, 917 N.E.2d 1098, 1104 (Ill.

App. Ct. 2009). Moreover, claims under the IUDTPA, when based upon the same alleged conduct as a Lanham Act claim, are also analyzed in accordance with Lanham Act principles, *SB Designs v. Reebok International, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004), and the statute is interpreted to be a codification of Illinois's common law of unfair competition, *Custom Business Sys. Inc. v. Boise Cascade Corp.*, 385 N.E.2d 942, 943 (Ill. App. Ct. 1979). Accordingly, as the parties agree, if CCBA's allegations suffice to state a claim under the Lanham Act as asserted in Count I, they also suffice for purposes of the Illinois statutory and common law claims asserted in Counts II, III, and IV.

### A. CCBA SC

In its motion to dismiss, CCBA SC contends that CCBA fails to satisfy each of the three elements of a trademark infringement claim: (1) a protectable mark; (2) use in commerce; and (3) likelihood of confusion.

#### i. Protectable Mark

For a mark to be protectable, it must be registered in the U.S. Patent and Trademark Office's ("U.S.P.T.O.") Principal Register or, where the mark is not registered with the U.S.P.T.O., "'the burden is on the claimant to establish that it is entitled to protection under § 43(a) of the Lanham Act.'" *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1013 (N.D. Ill. 2014) (quoting *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727 (7th Cir. 1998)). Since CCBA has not alleged that its marks are registered, the Court considers whether CCBA has adequately pleaded that its marks are otherwise protected.

"Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Id.* at 1014. "The level of trademark protection available generally corresponds to the distinctiveness of the mark." *Id.* at 1013. A

generic mark, for example, is one commonly used as the name of a kind of goods. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). This type of mark is not entitled to trademark protection because it lacks distinctiveness. *Id.* at 936. A descriptive mark "describes the ingredients, qualities, or characteristics of an article of trade or a service and, generally, it is not protected as a trademark because a merely descriptive mark is a poor means of distinguishing one source of services from another." *Platinum Home*, 149 F.3d at 727 (internal quotation marks omitted). "However, a descriptive mark may receive trademark protection if it acquires secondary meaning in the collective consciousness of the relevant community." *Id.* (internal quotation marks omitted). Secondary meaning refers to "a link in the minds of consumers between the marked item and its source." *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010). Finally, "terms that are either suggestive, arbitrary, or fanciful are automatically entitled to trademark protection because they are inherently distinctive." *Id.*

CCBA SC contends that the allegations of the complaint establish that CCBA's marks are unprotected descriptive marks. Though CCBA does not concede that its marks fall into the descriptive category, the Court finds that CCBA has sufficiently alleged that its marks have secondary meaning such that they would be protected even as descriptive marks. "A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 641 (7th Cir. 2001). A party may satisfy the pleading requirement for secondary meaning by alleging an extensive amount of time that a mark has been used and a community's "mental association," *id.*, between the mark and the party's service or product. *See, e.g., Bhatia v. Vaswani*, No. 18-CV-2387, 2021 WL 2254963, at *8 (N.D. Ill. June 3, 2021) (finding that the plaintiff had sufficiently

pleaded secondary meaning by alleging that its mark had been used for fifteen years and was the primary source for bringing in customers); *La Zaza Trattoria, Inc. v. Lo Bue*, No. 12 C 135, 2012 WL 3308846, at *2 (N.D. Ill. Aug. 10, 2012) ("The Plaintiff pleads that it has been using the service mark 'ZaZa' in connection with the operation of restaurant services continuously since 1995. This assertion is sufficient at the motion to dismiss stage to satisfy the protectible trademark prong of the claim."); *Morningware, Inc. v. Hearthware Home Prod.*, Inc., 673 F. Supp. 2d 630, 634 (N.D. Ill. 2009) (holding that the plaintiff's allegations of its "extensive and continuous" use of its mark for seven years were sufficient to withstand a motion to dismiss).

Here, CCBA alleges that it has used its marks "during these decades" and that "the names and marks have become synonymous with CCBA and its work on behalf of Chinese immigrants, within and particularly outside the Chinese community." (Compl. ¶ 10.) Viewing these allegations in the light most favorable to CCBA, the Court finds that CCBA has adequately pleaded its use of its marks for an extensive amount of time and that the community has developed a mental association between the marks and CCBA.

In arguing to the contrary, CCBA SC raises questions of fact improper for decision at the motion to dismiss stage. Secondary meaning is generally established through "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying," none of which are necessarily available to a plaintiff prior to discovery. *Packman*, 267 F.3d at 641. Nor is it necessary for a plaintiff to offer such proof to avoid Rule 12(b)(6) dismissal. In sum, it is simply premature for the Court to make a determination of whether CCBA's marks have acquired secondary meaning or not; even making a finding as to the proper categorization of CCBA's

marks would be inappropriate at this stage in litigation. CCBA has plead enough to survive a motion to dismiss.

### ii. Use in Commerce

Trademark infringement claims also require that the plaintiff allege the defendant's use of the contested mark in commerce. *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 713 (N.D. Ill. 2014). Here, CCBA specifically alleges that CCBA SC uses the infringing name in a "non-profit registry, when it attends community events and when it raises funds for the same types of community members served by CCBA and services offered by CCBA." (Compl. ¶ 23.) CCBA also adds that CCBA SC maintained bank accounts (*id.* ¶ 18), filed records with the Illinois Secretary of State (*id.* ¶¶ 14, 17, 21–22, 51), and sought out and obtained a commercial loan proposal from International Bank of Chicago for $15,000,000. (*Id.* ¶ 16.) Given these allegations, the Court finds it plausible to infer that the marks have been used by CCBA SC in commerce, and CCBA SC cites no authority to the contrary. Thus, CCBA has alleged the "use" element of its trademark infringement claim sufficiently.

### iii. Likelihood of Confusion

Lastly, CCBA SC contends that there is no likelihood of confusion among consumers as required to make out a trademark infringement claim. To determine whether use of a mark is likely to cause confusion, courts generally consider seven factors:

> (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to 'palm off' his product as that of another.

*Packman*, 267 F.3d at 643. Since the likelihood of confusion test is a fact-intensive one, it "ordinarily does not lend itself to a motion to dismiss." *Slep-Tone*, 41 F. Supp. 3d at 715 (internal quotation marks omitted); *see also Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 766

9

(N.D. Ill. 2008) (stating that likelihood of confusion is "a fact-specific inquiry best left for decision after discovery"). That is the case here.

The allegations of CCBA's Complaint expressly address five of the seven factors in the likelihood of confusion test.

- For the first factor—similarity between the marks in appearance and suggestion—CCBA alleges that CCBA SC has a "nearly identical name as Plaintiff" (Compl. ¶ 1) and is "trad[ing] off CCBA's name, mark, and goodwill by using the Infringing Name" (*id.* ¶ 23).

- For the second factor—similarity of the products, or services—CCBA alleges that CCBA SC "provides the same services" as CCBA, which generally involve serving the Chinese immigrant community in Chicago through cultural, educational, and social services. (*Id.* ¶ 9.)

- With respect to the third factor—area and manner of concurrent use—CCBA alleges that both CCBA SC serve Chicago and its Chinese community. (*Id.* ¶ 1.) Further, CCBA and CCBA SC list the same address as their principal place of business. (*Id.* ¶ 17.)

- For the fifth factor—strength of the plaintiff's mark—CCBA alleges that its "marks have become synonymous" with its century-long work with the Chinese community in Chicago. (*Id.* ¶¶ 9–10.)

- As for the seventh factor—intent of the defendant to "palm off" his product as that of another—CCBA alleges that by "creat[ing] and operat[ing] an entity to provide the same services as [CCBA] under a nearly identical name as [CCBA] . . . [CCBA SC and Vien] traded off the goodwill and reputation of [CCBA]." (*Id.* ¶ 1.)

The only factors in the likelihood of confusion test that CCBA does not directly address in the Complaint are the fourth and sixth factors—degree of care likely to be exercised by consumers and actual confusion, respectively. No single factor is dispositive; not even at the summary judgment stage. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). Since CCBA has managed to allege facts pertinent to five of the seven factors, it has pleaded enough to plausibly suggest that it could prevail on the likelihood of confusion test. *See, e.g.*, *Slep-Tone*, 41 F. Supp.

10

3d at 717 (finding that a complaint that failed to allege three of the seven factors still pleaded enough to survive a motion to dismiss).

Accordingly, CCBA has satisfied the pleading requirements for the trademark infringement claims in Counts I through IV against CCBA CS. The motion to dismiss is denied as to those claims.

### B. Vien

Defendants next argue that Counts I thought IV should be dismissed as to Vien because she cannot be held personally liable for the alleged trademark infringement. "Under *Dangler v. Imperial Mach[inery] Co.*[, 11 F.2d 945, 947 (7th Cir. 1926)] and progeny, officers are not personally liable for the corporation's infringement, including infringement committed under their general direction." *Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 865 (N.D. Ill. 2015); *see also Syscon, Inc. v. Vehicle Valuation Servs., Inc.*, 274 F. Supp. 2d 975, 976 (N.D. Ill. 2003) ("Despite its vintage, *Dangler* remains the law of this Circuit."). However, "[a]n exception exists where a plaintiff makes a 'special showing' that the officer acted 'willfully and knowingly.'" *Serv. By Air*, 78 F. Supp. 3d at 866 (quoting *Dangler*, 11 F.2d at 947). A complaint plausibly alleges this "special" showing where it alleges that an officer "personally participates in the manufacture or sale of the infringing article . . . or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability." *Id.* at 866. Further, "when applying *Dangler* at the motion to dismiss stage, courts should consider whether the plaintiff has pleaded sufficient facts regarding the corporate officer's personal participation in the allegedly infringing activities." *Big Daddy Games, LLC v. Reel Spin Studios, LLC*, No. 12-CV-449-BBC, 2012 WL 12995406, at *4 (W.D. Wis. Aug. 24, 2012).

The Court finds that CCBA has sufficiently pleaded the "special showing" necessary to state claims of trademark infringement against Vien. As alleged in the Complaint, Vien was not only the primary individual who created CCBA SC, but she also continues to play an active role in CCBA SC's activities and use of marks. (Compl. ¶ 12.) Vien is President of the board of CCBA SC. (*Id.* ¶ 5.) And her personal participation in the infringing conduct allegedly includes, among other things, (1) requesting the specific name "CCBA Service Center" (*id.* ¶ 12); (2) obtaining commercial loans on behalf of CCBA SC for the benefit of CCBA (*id.* ¶ 16); (3) signing two CCBA checks without the approval of CCBA's board (*id.* ¶ 19); and (4) continuing to receive invitations from civic organizations to attend community events that were directed to CCBA (*id.* ¶ 50). With respect to the element of "willful and knowing" intent, CCBA plausibly alleges that Vien is acutely aware of CCBA's marks given that she served as President of CCBA's board for four years and remains a member of its board. (*Id.* ¶¶ 11, 31.) Further, CCBA alleges that Vien "used her position of influence and control in CCBA to create CCBA SC" (*id.* ¶ 48) and that she "seized the opportunity to spin-off CCBA SC for her own benefit to enhance her standing in Chicago's Chinese immigrant community and enhance her banking and real estate development ventures" (*id.* ¶ 49).

In sum, CCBA has successfully pleaded "allegations that, at the time of incorporation, [Vien] was motivated by some improper purpose or acting outside the scope of [her] corporate duties." *Specht v. Google, Inc.*, 600 F. Supp. 2d 858, 864 (N.D. Ill. 2009). As a result, Counts I through IV for trademark infringement survive as to Vien as well.

## II.   Breach of Fiduciary Duty (Count V)

Defendants also contend that CCBA fails to state a claim for breach of fiduciary duty against Vien. Under Illinois law, "in order to state a claim for breach of fiduciary duty, it must be

alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Neade v. Portes*, 739 N.E.2d 496, 503 (2000).

Defendants first argue that CCBA has failed to plead that Vien breached her fiduciary duty of loyalty to CCBA. Corporate officers "owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed." *Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1059 (1993). "Self-dealing or personal gain is not necessarily required to state a claim for breach of fiduciary duty. A corporate officer who sabotages the company may do so for no personal gain, but nevertheless breach a fiduciary duty owed to the firm." *MiMedx Grp., Inc. v. Fox*, No. 16 CV 11715, 2017 WL 3278913, at *5 (N.D. Ill. Aug. 2, 2017).

CCBA's allegations that Vien breached her fiduciary duty of loyalty to CCBA when she created the competing entity CCBA SC sufficiently state a claim. To begin, as alleged, Vien owes a duty of loyalty to CCBA because she is a corporate officer of that entity. (Compl. ¶ 11.) Having alleged that a duty exists, CCBA further alleges that Vien breached her duty of loyalty "when she orchestrated the creation of sister non-profit corporation and then surreptitiously spun it off into a competing entity using the Infringing Name and continued to operate under the Infringing Name." (*Id.* ¶ 44.) Additionally, CCBA alleges that Vien "seized the opportunity to spin-off CCBA SC for her own benefit to enhance her standing in Chicago's Chinese immigrant community and enhance her banking and real estate development ventures." (*Id.* ¶ 49.) Addressing Vien's intent and the harm caused by her breach, CCBA alleges that, "[h]aving orchestrated the creation of CCBA SC while under the umbrella of CCBA, Vien then covertly divorced CCBA SC from its relationship

13

to CCBA . . . to operate in the same community as CCBA and trade off CCBA's name, mark, and goodwill using the Infringing name." (*Id.* ¶ 23.) These allegations are sufficient to allow the reasonable inference that Vien exploited her position within CCBA for her own personal benefit, capitalizing on the CCBA marks so that she and CCBA SC could succeed professionally. CCBA may proceed on a theory that Vien breached her fiduciary duty of loyalty.

On a final note, CCBA also purports to assert a claim against Vien for breach of the fiduciary duty of obedience. But such a claim is not cognizable under Illinois law. Rather, "corporate officers and directors have duties of good faith, loyalty, and honesty." *In re Orion Drywall, Inc.*, No. 08 B 06641, 2011 WL 98942, at *6 (Bankr. N.D. Ill. Jan. 12, 2011). CCBA does not cite any authority that would support a breach of fiduciary duty claim based on a duty of obedience and will not be permitted to proceed on such a theory.

### III.    Usurping Corporate Opportunity (Count VI)

In Count VI, CCBA asserts a claim against Vien for usurpation of corporate opportunity. To state a claim for usurpation of corporate opportunity, a plaintiff must allege (1) that the defendant was a fiduciary of the corporation; (2) that the defendant took advantage of a business opportunity that belonged to the corporation; and (3) that the defendant failed to disclose and tender the opportunity to the corporation before taking advantage of it. *See In re Concepts Am., Inc.*, No. 14 B 34232, 2018 WL 3019629, at *3 (Bankr. N.D. Ill. June 14, 2018). As explained by the Illinois Supreme Court in *Indeck Energy Services, Inc. v. DePodesta*:

> Strictly speaking, corporate opportunity cases are characterized by a particular and narrow fact pattern: (1) a third party presents an identifiable, concrete deal relating to the corporate employer's business; (2) the deal is a 'zero-sum' game in the sense that only the corporate employer or its fiduciary—but not both—can seize it, leaving the loser permanently shut out; and (3) the fiduciary diverts the deal to himself, whether before or after his resignation.

14

183 N.E.3d 746, ¶ 47 (Ill. 2021) (quoting William L. Schaller, *Corporate Opportunities and Corporate Competition in Illinois: A Comparative Discussion of Fiduciary Duties*, 46 J. Marshall L. Rev. 1, 18 (2012)).

In support of its claim for usurpation of corporate opportunity, CCBA alleges that it has not received invitations to community events on account of Vien intercepting them. (Compl. ¶ 50.) As a result, according to CCBA, it has missed various events from which it "could have benefited." (*Id.*) But CCBA has not alleged any "identifiable, concrete deal" from which it was shut out. *Indeck*, 183 N.E.3d at ¶ 47. Nor does CCBA allege that Vien or CCBA SC took advantage of any particular corporate opportunity by attending the events or that CCBA was precluded from attending the events itself. Without such allegations, CCBA has not sufficiently alleged that Vien diverted corporate opportunities from CCBA to herself.

CCBA claims that Vien's decision to sign CCBA SC Articles of Amendment stating that, upon CCBA SC's dissolution, all assets would be transferred to itself for its own purposes—rather than to CCBA—represents another instance of usurpation of corporate opportunity. (*See id.* ¶ 51.) But those allegations do not suffice to make out a corporate opportunity claim either. Though an earlier version of the Articles of Amendment stated that CCBA enjoyed the benefit of CCBA SC's assets post-dissolution, that does not equate to a business opportunity belonging to CCBA. *See In re Concepts Am.*, 2018 WL 3019629, at *3.

Further, CCBA argues that Vien usurped CCBA's opportunities by obtaining a $15 million commercial loan by CCBA SC for CCBA, signing two CCBA checks without prior approval of CCBA's board, and failing to return CCBA's property to it upon request. But the $15 million loan proposal Vien obtained was for CCBA's benefit. Thus, Vien diverted no business from CCBA; instead, she presented a business opportunity to the non-profit. Her decision to sign

15

two CCBA checks without the board's approval also does not indicate that CCBA lost out on any business opportunity due to her actions. And CCBA's Complaint similarly lacks allegations that Vien's failure to return CCBA documents has deprived CCBA of business.

Because CCBA's allegations do not satisfy the pleading requirements for usurpation of corporate opportunity, the Court grants CCBA SC's motion to dismiss with respect to Counts VI.

### IV. Count VII—Conversion

Finally, CCBA SC contends that CCBA fails to state a conversion claim against Vien in Count VII. To state a claim for conversion under Illinois law, a plaintiff must allege "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *PrimeSource Bldg. Prod., Inc. v. Felten*, No. 16 CV 11468, 2017 WL 11500971, at *9 (N.D. Ill. July 6, 2017) (quoting *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005).

CCBA alleges that Vien possesses CCBA corporate records and documents that she has refused to return. (Compl. ¶ 24.) It is true that, "in Illinois, corporate directors have the presumptive right to inspect corporate books and records," *Munroe-Diamond v. Munroe*, 139 N.E.3d 630, ¶ 27 (Ill. App. Ct. 2019). Still, the right to **inspect** corporate books and records does not equate to a right to assume control over corporate documents, keep the documents from the corporation, and refuse to return them to the corporation. Drawing all reasonable inferences in CCBA's favor, it has alleged enough to state a claim for conversion against Vien. Therefore, the Court denies CCBA SC's motion to dismiss Count VII.

16

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 16) is granted in part and denied in part. The motion is granted as to the usurpation of corporate opportunity claim in Count VI and that claim is dismissed. The motion is otherwise denied.

ENTERED:

Dated: September 30, 2023

_____
Andrea R. Wood
United States District Judge